**Affirmed and Memorandum Opinion filed April 27, 2023**



In The

# Fourteenth Court of Appeals

## NO. 14-22-00815-CV

## IN THE INTEREST OF L.D.T.P., A CHILD

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2021-00320J**

## MEMORANDUM OPINION

Father appeals the trial court's final order terminating his parental rights as to his two-and-a-half-year-old son, L.D.T.P. ("Lazaro").[1] Father does not contest the trial court's finding that he failed to meet the requirements of his court-ordered service plan, but seeks to reverse the trial court's judgment in his challenge to the sufficiency of the evidence in support of the trial court's best interest findings.

To avoid future collateral consequences in connection with the trial court's endangerment findings, Father also challenges the sufficiency of the evidence to

---

[1] We use pseudonyms to refer to appellants, the children, and other family members. See Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8.

support those predicate grounds.  We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Father met Mother on Facebook.  According to Father, he lived with Mother nine or ten months prior to his arrest in July 2020–a period that included the first part of Mother's pregnancy with Lazaro and which coincides with events reported by appellee, the Department of Family & Protective Services ("Department"), leading to Lazaro's removal.

### *Department's Investigation and Removal*

The Department received the first report pertaining to Mother on May 15, 2020, approximately six months before Lazaro was born. At that time, it was alleged that Mother was using "crack cocaine", that she had physically abused two of her children, and was "prostituting with [the children] in the home."  When the Department went to visit Mother, the investigator discovered that an eviction process had begun for not allowing maintenance personnel to access the unit and for falling three months behind on her rent.  Mother refused permission for the investigator to go inside the apartment without a warrant.  The case remained open.

The second intake was initiated two weeks later when the reporter noted that Mother had posts on Facebook of herself smoking and drinking and that she was pregnant.  The reporter suspected that her own ex-boyfriend, Lee, was the father of the unborn child, and told the caseworker that Lee was a drug dealer who had been selling drugs to Mother before becoming involved with Mother.  The Department's investigators had limited success contacting Mother while investigating the second report and did not speak to her in-person until August 2020.   The investigation into the first and second reports remained open at the time a third report was made.

In November, a third report was made to the Department alleging Mother's

2

neglectful supervision of Lazaro after both Mother and Lazaro revealed positive screening results for cocaine after Lazaro's birth. Lazaro's medical records show he was diagnosed with "drug use complicating pregnancy," and that the pregnancy was complicated by Mother's "scant prenatal care." However, a nurse reported to the Department that Mother was appropriate with the newborn who was doing well and showed no symptoms of withdrawal. Mother had admitted to using cocaine use during her pregnancy but stated she did not know she was pregnant at the time. Her medical records indicate that she reported not knowing that she was pregnant until five months' gestation.

Mother originally reported to the Department that Lee was Lazaro's father but that he was not involved in her life. Father, though not mentioned in the removal affidavit, is referenced in medical records at the time of Lazaro's birth. Mother named Father as Lazaro's biological father to the hospital staff. Mother reported that he had been in jail for four months and she was unsure when he would be released.

Mother reported living with her oldest son's father, Alex, who welcomed Mother, his son and Mother's other children to stay with him. Alex purchased a crib for Lazaro, and the Department's initial observations were that the home and conditions were suitable.

A month after Lazaro's birth, Alex and Mother both tested positive for cocaine.

### *The termination lawsuit, Family Service Plan*

On March 4, 2021, approximately eight months after Father was arrested and incarcerated, and four months after Lazaro was born, the Department filed the present termination suit in which it alleged that allowing the child to remain in his

3

parents' care was contrary to his welfare and requested Lazaro be placed in its temporary managing conservatorship following a full adversary hearing. The Department's live amended petition seeks termination against Father under three grounds: endangerment (by conduct), constructive abandonment, and for non-compliance with the court-ordered post-removal plan.   Tex. Fam. Code Sec. 161.001(b)(1)(E), (N), & (O).

According to the Department's caseworker's testimony at trial, a family service plan was given to Father in May 2021.  The court signed an order establishing Father's paternity to Lazaro based on the results of genetic testing.

Father contacted the Department shortly after he was released in April of 2022 and told the Department's caseworker that he was "willing to do whatever to get his son back."  On April 27, 2022, the Department served him with notice of the termination suit.

On July 28, 2022, the Department filed an amended family service plan for Father, in both Spanish and English, which was approved by the Court on August 2, 2022. It required Father to maintain stable housing and income, complete parenting classes, participate in a drug screen (which required that if Father tested positive that he complete a substance abuse assessment and follow any recommendations), participate in a psycho-social assessment, and develop a support system. The plan stated the concern that Father might continue to participate in criminal activities that would preclude him from parenting Lazaro.

Pursuant to the plan, Father participated in a substance abuse assessment and a psychosocial assessment; both assessments recommended Father participate in substance abuse therapy appointments. Father attended two therapy sessions but had missed one session shortly before trial and had taken no action to reschedule. Father participated in a parenting class and has shown proof of employment and

housing. The Department caseworker agreed that Father was progressing with most of his family service plan. Compliance with drug testing was a component of Father's plan. Father told the Department that he did not use drugs and "has never used drugs or alcohol," but admitted to the Department that in 2020 police found illegal drugs in his car. Two of Father's drug screenings under the plan yielded positive results. On July 7, 2022, Father was positive for cocaine in hair-follicle test. Again, on September 6, 2022, Father tested positive for cocaine. At trial, Father suggested that these positive results were related to second-hand vape smoke that he encountered on his job driving a truck.

### *Conclusion of Hearing and Judgment*

At the conclusion of trial, the court signed an order terminating Father's parental rights pursuant to Texas Family Code, Sections 161.001(b)(1)(E), (O) and (2). The Court also found termination proper under the unpled endangerment-by-conduct theory under section 161.001(b)(1)(D), yet made no express finding on the abandonment theory (which had been pled) under section 161.001(b)(1)(N). This appeal followed.

### II. ISSUES AND ANALYSIS

A court may terminate the parent-child relationship if the court finds by clear and convincing evidence that (1) the parent has engaged in at least one statutory predicate act and (2) termination is in the best interest of the child. *See In re N.G.*, 577 S.W.3d 230 (Tex. 2019); *In re L.C.L.*, 599 S.W.3d 79, 83 (Tex. App.—Houston [14th Dist.] 2020) (en banc), *pet denied*, 629 S.W.3d 909 (Tex. 2021); *see also* Tex. Fam. Code § 161.001(b).

Father raises two issues. In his first issue, Father aims to avoid future collateral consequences the trial court's judgment could have on his parental rights

to other children by challenging the legal and factual sufficiency of the evidence to support the trial court's finding of the two endangerment-predicate grounds for termination. Tex. Fam. Code Ann. § 161.001(b)(1)(D) & (E). In his second issue, Father seeks to retain his parental rights to Lazaro by challenging the sufficiency of the evidence to support the trial court's finding that termination of his parental rights is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(b)(2).

## A. Standard of Review

Termination of the parent-child relationship is a drastic remedy and is of such weight and gravity that due process requires the state to justify termination by clear and convincing evidence. *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002); *see also In re L.G.R.*, 498 S.W.3d 195, 201 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Clear and convincing evidence is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. Tex. Fam. Code § 101.007. This heightened burden of proof results in a heightened standard of review when evaluating the sufficiency of the evidence. *In re L.G.R.*, 498 S.W.3d at 202.

Under a legal sufficiency review, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been not credible, but we do not disregard undisputed facts. *See In re Commitment of Stoddard*, 619 S.W.3d 665, 674 (Tex. 2020).

Evidence is factually insufficient if, in light of the entire record, "the disputed evidence that a reasonable factfinder could not have credited in favor of

the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *In re J.F.C.*, 96 S.W.3d at 266.

**B. Is the trial court's order terminating Father's parental rights supported by legally and factually sufficient evidence to support termination of parental rights under 161.001(b)(1)(D) or (E)?**

Only one predicate finding under section 161.001(b)(1) is necessary to support a judgment of termination when there also is a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re L.E.R.*, No. 14-21-00590-CV, 2022 WL 1088592, at *8 (Tex. App.—Houston [14th Dist.] Apr. 12, 2022, no pet. h.). Although Father has conceded the trial court's predicate ground under Subsection (O), we must address the trial court's endangerment findings under section 161.001(b)(1)(D) or (E) because he has challenged the sufficiency of the evidence to support those findings which may have collateral consequences to Father in the future. *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam); *Interest of P.W.*, 579 S.W.3d 713, 720 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

Termination of parental rights is warranted if the factfinder finds by clear and convincing evidence, in addition to the best-interest finding, that the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child" or "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." Tex. Fam. Code § 161.001(b)(1)(D), (E). "To endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or physical health. *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996).

**1. Tex. Fam. Code § 161.001(b)(1)(D):** *Endangerment by Environment.*

By making a finding under subsection (D), the court concluded that Father knowingly placed or knowingly allowed Lazaro to remain in conditions or surroundings which endangered Lazaro's physical or emotional well-being. See Tex. Fam. Code § 161.001(b)(1)(D). Inappropriate, abusive, or unlawful conduct by a parent or other persons who live in the home can create an environment that endangers the physical or emotional wellbeing of a child. *In re L.E.R.*, 2022 WL 1088592, at *9. A single act or omission may be sufficient to support termination under subsection (D). *Id*. In evaluating endangerment under subsection (D), the court must consider the child's environment before the Department obtained custody. *Id*. Subsection (D) is not a basis for termination of parental rights if the parent was unaware of the endangering environment. *In re V.A.*, 598 S.W.3d 317, 329 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). There must be clear and convincing evidence of endangerment as well as of the parent's awareness of the endangering environment. *Id*. Although the parent need not have certain knowledge that an actual injury is occurring, the parent must at least be aware of the potential for danger to the child in such an environment and must have disregarded that risk. *In re A.S.*, 261 S.W.3d 76, 83 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

Though neither party draws particular attention to the pleadings, we note that the Department never asserted subsection (D) as a predicate ground for termination in any petition on record. Nevertheless the trial court's termination order specifically makes a predicate finding of endangerment under subsection (D). Assuming, without deciding, that unpled termination grounds can be tried by consent and that the endangerment-by-environment ground under subsection (D) was tried by consent, we conclude the evidence to support that ground was legally insufficient. Father's criminal activity and imprisonment leading up to Lazaro's

8

birth, at a time when he knew Lazaro would be born, is relevant to the analysis. However, this activity alone, occurring before the Department obtained custody, does not support a finding under subsection (D). The criminal activity was not a matter of domestic violence, it did not directly harm Lazaro, Mother or any other person in the household. Father denied knowledge that Mother had used drugs. However doubious Father's denial might seem, there was no evidence to the contrary upon which the trial court could rely. *In Interest of F.E.N.*, 542 S.W.3d 752, 764–65 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *Schwartz v. Pinnacle Communications*, 944 S.W.2d 427, 434 n.5 (Tex. App.–Houston [14th Dist.] 1997, no writ) ("[A]lthough a trial court is generally free to disbelieve testimony, in the absence of competent evidence to the contrary, it is not authorized to find that the opposite of the testimony is true."). The Department's own witness testified that the agency had no evidence that Father knew about the Mother's drug use. Our review of the record shows that the testimony that Father had no knowledge of Mother's drug use during pregnancy was left uncontroverted.

Accordingly, we conclude the evidence is legally and factually insufficient to support the subsection (D) finding.

**2. Tex. Fam. Code § 161.001(b)(1)(E):** *Endangerment by Conduct.*

By making the subsection (E) finding, the judge determined that Father had engaged in conduct or knowingly placed Lazaro with persons who engaged in conduct that endangered Lazaro's physical or emotional well-being. Tex. Fam. Code Ann. § 161.001(b)(1)(E). A finding of endangerment under subsection (E) requires evidence that the endangerment resulted from the parent's conduct, including acts, omissions, or failures to act. *In re S.R.*, 452 S.W.3d at 361. Unlike subsection (D), termination of the parent-child relationship under subsection (E) must be based on more than a single act or omission; the statute requires a

9

voluntary, deliberate, and conscious course of conduct by the parent. *Id.* A court properly may consider actions and inactions occurring both before and after a child's birth to establish a course of conduct. *In re A.L.H.*, 515 S.W.3d 60, 91 (Tex. App.—Houston [14th Dist.] 2017, pet. denied).

Additionally, our review of termination judgments under subsection (E), particularly those based on evidence of a parent's incarceration and criminal conduct, continues to be guided by the high court's nuanced decision in *Texas Department of Human Services v. Boyd*, 727 S.W.2d 531, 534 (Tex. 1987).

In *Boyd*, the father of the child was in jail at the child's birth. 727 S.W.2d at 533. He saw the child eight months later upon his release on parole, lived with her for five months, and then returned to jail for burglary. *Id.* The evidence was "vague, at best" as to whether the father ever supported the child. *Id.* The father and mother were not married, and father's paternity was not adjudicated until the termination hearing. *Id.* at 532. The Texas Supreme Court concluded that such evidence supports a termination based on endangerment. *Id.* at 533. The court expressly rejected the court of appeals' conclusion that danger under subsection (E) "cannot be inferred from parental misconduct." *Id.*

Both this court and the Supreme Court of Texas continue to follow *Boyd*. *Interest of M.M.*, No. 14-18-00881-CV, 2019 WL 1387964, at *8 (Tex. App.—Houston [14th Dist.] Mar. 28, 2019, no pet.) ("The court's holding in *Boyd* continues unabated"); *Interest of J.F.-G.*, 627 S.W.3d 304, 312–13 (Tex. 2021). In *Interest of J.F.-G.*, Supreme Court stated:

> Endangering conduct under subsection (E) need not be directed at the child. Nor must the child actually suffer injury. Rather, 'endanger' means to expose to loss or injury; to jeopardize. In *Texas Department of Human Services v. Boyd*, we acknowledged that "Texas cases have considered the involuntary termination of the rights of an imprisoned

10

parent, and have held that mere imprisonment will not, standing alone, constitute engaging in conduct which endangers the emotional or physical well-being of a child," but we nevertheless held that incarceration does support an endangerment finding "if the evidence, including the imprisonment, shows a course of conduct which has the effect of endangering the physical or emotional well-being of the child." A parent's criminal history—taking into account the nature of the crimes, the duration of incarceration, and whether a pattern of escalating, repeated convictions exists—can support a finding of endangerment. Imprisonment thus "is certainly a factor" the trial court may weigh when considering endangerment.

627 S.W.3d 304, 312–13.

The record of Father's conduct for the reviewable period under subsection (E) constituted more than a single criminal offense resulting in incarceration. First, Father was indicted for two offenses in July of 2020 for installing a card skimming device at a fuel pump in the effort to steal credit card information, and on the same date for cocaine possession. He was charged with both crimes, only pled guilty to the credit card offense, but admitted to the Department of his possession of cocaine. This resulted in Father's absence at Lazaro's birth through the first year-and-a-half of Lazaro's life. During this period, the court may have considered circumstances making unborn Lazaro vulnerable in his absence. Father was aware of the pending CPS cases against Mother, and that the father of one of Mother's other children challenged her parentage.

Second, in the short time after Father was released and subject to the family service plan, he twice tested positive for cocaine in the short five-month period before trial, while he had the opportunity to obtain his child's return by complying with the Department's service plan and his parental rights were conditioned on his ability to do so. He thus engaged in same conduct during the termination proceedings which led to his initial arrest and incarceration, and therefore risked not only another criminal charge, conviction, and absence from his child, but also

11

the termination of his relationship with Lazaro. *See Interest of M.M.*, No. 14-18-00881-CV, 2019 WL 1387964, at *8 (Tex. App.—Houston [14th Dist.] Mar. 28, 2019, no pet.) (finding that a father's criminal conduct leading to his incarceration at the time of the child's removal and during the termination proceedings was clear and convincing support for an endangerment determination); *also In re K.R.L.*, 14-10-00187-CV, 2010 WL 4069351, at *5 (Tex. App.—Houston [14th Dist.] Oct. 19, 2010, no pet.) ("An incarcerated parent is absent from the child's daily life and unable to provide support. Therefore, a pattern of intentional criminal activity that exposes a parent to incarceration is conduct that endangers the physical and emotional well-being of a child.")

Though Father asserted no objections to the evidence of the test results at trial, Father argues that the two positive test results were unreliable. First, he argues that his positive result on July 7, 2022 is discredited by a subsequent negative result on July 29, 2022. He provides no authority to support this reasoning; and we are unpersuaded particularly in light of the fact that he was reported to fail a subsequent drug test on September 6, 2022, weeks before trial.

Father also argues that his positive result from September 6, 2022 is deficient because the Department did not offer the physical report to support the caseworker's testimony at trial. We might be inclined to entertain this argument had Father objected at trial to the testimony or impeached the testimony on this basis.

The evidence would support a finding that Father had a history of criminal conduct, incarceration, and drug use that endangered the Lazaro and would continue to engage in such behavior. We conclude that under these circumstances, the factfinder could have formed a firm belief or conviction that its endangerment finding under subsection (E) was true. *E.g., See Interest of M.M.*, 2019 WL

1387964, at *8; *In re J.B.*, 2021 WL 1683942, at *6; *In re J.O.A.*, 283 S.W.3d at 344. Considered in the light most favorable to the trial court's finding, the evidence is legally sufficient to support the trial court's determination that termination of Father's parental rights was justified under section 161.001(b)(1)(E). Further, in view of the entire record, we conclude the disputed evidence is not so significant as to prevent the trial court from forming a firm belief or conviction that termination was warranted under section 161.001(b)(1)(E). Accordingly, we conclude the evidence is legally and factually sufficient to support the subsection (E) finding.

We therefore overrule appellant's second issue.

**C. Is the trial court's order terminating Father's parental rights supported by legally and factually sufficient evidence to support the trial court's finding that termination is in the best interest of the child?**

There is a strong presumption that the best interest of the child is served by keeping the child with his natural parents. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam) (citing Tex. Fam. Code Ann. § 153.131(b)); *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.). However, prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. *In re S.R.*, 452 S.W.3d at 366 (citing Tex. Fam. Code Ann. § 263.307(a)). Proof of acts or omissions under section 161.001(b)(1) is probative of the issue of the child's best interest. *See id*. The considerations that the factfinder may use to determine the best interest of the child, known as the *Holley* factors, include:

(1) the desires of the child;

(2) the present and future physical and emotional needs of the child;

(3) the present and future physical and emotional danger to the child;

(4) the parental abilities of the person seeking custody;

(5) the programs available to assist the person seeking custody in

13

promoting the best interest of the children;

(6) the plans for the child by the individuals or agency seeking custody;

(7) the stability of the home or proposed placement;

(8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and

(9) any excuse for the parent's acts or omissions.

*See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (interpreting former Tex. Fam. Code § 15.02 (since amended)); see also Tex. Fam. Code Ann. § 263.307(b) (listing factors to be considered in evaluating "whether the child's parents are willing and able to provide the child with a safe environment").

*Desires of the Child*

Father was in prison when Lazaro was born and did not first visit him until over a year after Lazaro had been in foster care. When Father was out of prison, he visited Lazaro most, but not all months leading up to his trial.[2] The caseworker testified initially that Lazaro would cry at the beginning of each visit, but toward the end of the visit "he seems to warm up as [Father] brings him snacks and videos on his phone". Through the testimony of its caseworker, the Department provided evidence showing the child was placed in a foster home with foster parents who demonstrated the ability to care for Lazaro, provide for all his needs, and wished to adopt him should termination be granted.

Under such circumstances the factfinder may consider that the child has bonded with the foster family, is well cared for by the foster family, and has spent minimal time with the parent. *In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.— Houston [14th Dist.] 2016, pet. denied).

---

[2] The record and testimony indicate that Father attended scheduled visits pursuant to the Family Service Plan in April, May, July, and August, but failed to visit Lazaro during the month of June.

14

The Department's plan would also afford Lazaro with the opportunity to obtain permanency and stability in a home with his siblings, to whom he was significantly bonded.

This factor weighs in favor of terminating Father's parental rights.

*Present and Future Physical and Emotional Needs and Dangers*

At the time shortly before trial, Father provided proof that he was employed and had secured a stable residence.[3] He was also participating in parenting classes and attended most visits with Lazaro. Such facts are supportive of finding that he demonstrated some willingness to address Lazaro's emotional and physical needs.

However, his latest positive drug test shortly before trial is evidence the trial court could have considered as probative of Father's recklessness with regard to the risk of another drug-related incarceration, again putting his presence at risk, jeopardizing his ability to care directly for Lazaro's physical and emotional needs.

Father's positive drug test results are also supportive of the court's consideration of present and future physical and emotional dangers to the child. A parent's drug use supports a positive finding on the third *Holly* factor that termination is in the best interest of the child. *Interest of D.M.M.*, No. 14-18-00750-CV, 2019 WL 546029, at *8 (Tex. App.—Houston [14th Dist.] Feb. 12, 2019, pet. denied). The factfinder can give "great weight" to the "significant factor" of drug-related conduct. *In re K.C., 219 S.W.3d 924*, 927 (Tex. App.–Dallas 2007, no pet.); *see also, In re J.J.W.*, No. 14-18-00985-CV, 2019 WL 1827591, at *6 (Tex. App. Houston [14th Dist. 2019, pet. denied) ("Drug abuse and its effect on the ability to parent can present an endangering course of conduct.").

---

[3] Father had only provided the department with an address of such location where he was living a week before trial. The Department had not yet had an opportunity to evaluate the residence.

Foster parents did not testify, but the Department's caseworker testified that she had observed Lazaro in his foster home and said his foster family was meeting all his physical and emotional needs and they wished to adopt him. The caseworker testified that there was a bond between Lazaro and his foster parents, and that the child sought his foster parents out for comfort and was very attached to them. Under the foster family's care Lazaro was developmentally on target and had no medical needs. She also explained that Lazaro was in daycare which, the caseworker testified said, he loved. She said, "he is the boss in day care. He's super friendly and is always wanting to help the teacher."

On the balance, these second and third *Holly* factors weigh in favor of terminating Father's parental rights.

### *The parental ability of the individuals seeking custody*

The Court could have also considered Father's relationship with other children and any proven ability to care for the needs of other children. Father provided no details other than the fact he had parented children that he left behind in Cuba. Father testified that during the year he was living with Mother he parented all of her other children and that they referred to him as their father. Even assuming Father provided for these children's emotional and physical needs, the record shows that the household was unstable during that time, subject to reports of drug traffic and prostitution. The court could have reasonably concluded that this factor favored termination of Father's parental rights.

This factor weighs in favor of terminating Father's parental rights.

### *The plans for the child by the individuals or agency seeking custody, and the stability of the home or proposed placement*

Placement plans and adoption are relevant but "the lack of evidence about definitive plans for permanent placement and adoption cannot be the dispositive

factor." *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). The issue is "whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that termination of the parent's rights would be in the child's best interest even if the agency is unable to identify with precision the child's future home environment." *Id.* The court was provided only limited details about the stability of Father's home. The Department reported that Lazaro was sought after by his foster family. In addition to the likelihood of a stable foster family for Lazaro, the Department plans for Lazaro included a possible opportunity for Lazaro's sibling (with who Lazaro had already bonded). Even with some details of Lazaro's future with the department under its plan left to be determined, its plans and proof of stability favored Lazaro's best interests.

This factor weighs in favor of terminating Father's parental rights.

*Acts, omissions, and excuses of existing parent-child relationship: Noncompliance with subsection (O) and Excuses for Noncompliance*

Evidence supporting termination under the grounds listed in section 161.001(b)(1) also can be considered in support of a finding that termination is in the child's best interest. *See C.H.*, 89 S.W.3d at 27 (holding the same evidence may be probative of both section 161.001(b)(1) grounds and best interest). In determining the best interest of the child in proceedings for termination of parental rights, the trial court properly may consider that the parent did not comply with the court-ordered service plan for reunification with the child. *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013). Most of the excuses Father presents for failing his drug test under his plan on appeal were not presented at trial, yet had they been, they would not have been so overwhelming to discount Father's noncompliance with the family service plan.

This factor weighs in favor of terminating Father's parental rights.

*Concluding Analysis of Holly factors*

Applying the applicable *Holley* factors to the evidence, we conclude that legally and factually sufficient evidence supports the trial court's finding that termination of Father's parental rights is in Lazaro's best interest. *See Interest of D.M.M.*, 2019 WL 546029, at *8; *In re E.C.R.*, 402 S.W.3d at 249; *See In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.–Fort Worth 2006, no pet.) (considering the parent's drug use, inability to provide a stable home, and failure to comply with a family-service plan in holding the evidence supported the best-interest finding). Based on the evidence presented, the trial court reasonably could have formed a firm belief or conviction that terminating Father's rights served Lazaro's best interests so that they quickly could achieve permanency through adoption. *See In re T.G.R.–M.*, 404 S.W.3d 7, 17 (Tex. App.–Houston [1st Dist.] 2013, no pet.); *M.G.D.*, 108 S.W.3d at 513–14.

Accordingly, we overrule Father's second issue.

### III. CONCLUSION

Having overruled each of the issues presented, we affirm the judgment of the trial court.


/s/    Randy Wilson
        Justice

Panel consists of Justice Wise, Justice Zimmerer and Justice Wilson.

18